UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

JEANANNE GILCO,

       Plaintiff,

v.                          Civil Action No. 2:11-0032

LOGAN COUNTY COMMISSION,
LOGAN COUNTY HOME CONFINEMENT DEPARTMENT,
JOHN REED, and
JOHN DOES I-V,

       Defendants.


MEMORANDUM OPINION & ORDER


      Pending are the motions (1) for summary judgment of defendants Logan County Commission and Logan County Home Confinement Department, filed June 21, 2012; and (2) for summary judgment of defendant John Reed, also filed June 21, 2012.

      In this suit, plaintiff Jeananne Gilco alleges that she was sexually assaulted by defendant John Reed, an officer of the Logan County Home Confinement Department. Specifically, she claims that on two separate occasions she was forced to administer sexual favors to Reed in order to prevent him from reporting possible violations of her home confinement order.

I.   Background


In April 2009, Gilco was placed on home confinement as a condition of her bond stemming from a felony murder charge.[1] (Gilco Dep. at 18).  Her assigned home confinement officer was Trish Gower, but she alleges to have encountered Reed on several occasions.  Pertinent to this lawsuit, in or about May 2009, Gilco drove to the home confinement office in Logan, West Virginia, and parked in a public garage near the Logan County Courthouse.  Upon exiting her vehicle, she noticed Reed standing between the garage and the home confinement office.  According to Gilco, Reed questioned her about whether she had a license, and when she replied that she did not, he led her back to her vehicle and told her to "get in."  (Id. at 21).  At Reed's direction, Gilco drove to the basement, whereupon she alleges that he told her he had "physical needs" and that the two could "work something out to keep you from getting in trouble and going back to jail."  (Id. at 22).  She initially refused, saying that she was "on [her] period and [could not] do anything like that," but Reed insisted that she could "use [her] mouth,"

---

[1] Gilco subsequently pled guilty to first degree robbery, for which she received a ten-year sentence.  (Gilco Dep. at 16).

2

and gave her an ultimatum: "either that or jail." (Id. at 22-23). Facing that decision, Gilco performed oral sex on Reed, during which she alleges he "pushed [her] head down" and held her by the hair, and after which he swore and laughed at her. (Id. at 23). Following Reed's orders, she waited to allow him to return to the office, and then proceeded to her appointment. Gilco did not report the incident to the County Commission or Home Confinement Department.

The second alleged incident occurred in August or September 2009, when Reed accompanied Gower to Gilco's home for an official visit and to administer a drug test. After Gower left the home to retrieve the screening kit from her vehicle, Gilco confided to Reed that she had taken an unauthorized narcotic (Xanax). (Id. at 27). She alleges that Reed told her to "shut up," and that he would "fix it" as long as she agreed to drive to the basement of the parking garage the next day. (Id.). Gilco did, and she claims that when Reed entered the vehicle, he took off his pants and once again demanded oral sex, stating that he had "fixed [Gilco's] problem, and now [she] needed to fix his." (Id. at 30). Gilco then performed oral sex on Reed, during which he groped her breasts. (Id. at 31). Again, Gilco did not report this incident.

3

According to Gilco, she felt compelled to perform these acts, and was afraid to report them, because of the power Reed held over her as a home confinement officer.  While Reed did not have the power to personally penalize Gilco or return her to jail, he did have the power to take the "initial steps" required to bring her before the circuit court or magistrate judge for a revocation hearing.  (Reed Dep. at 132).  According to Reed himself, when he does so, the revocation rate is "about a hundred percent."  (Id.).

Pertaining to Reed's hiring, training, and supervision by the County Commission and Home Confinement Department, Gilco asserts the following.  After working 40 years in the mining industry, Reed became a home confinement officer in January 2005.  (Id. at 11).  He had applied for a job as a bailiff, but there was no position available.  After a half-hour interview, he was offered the home confinement position instead.  (Id. at 87-90).  He received no manual on his duties and no training.  (Id. at 17).  "Basically," he was told, "here's a badge, here's a radio, go to work."  (Id.).  Nonetheless, he claims he did not need any specific training to know that he was not to have sex with any home confinement wards.  (Id. at 120).  Once hired, he was never tested concerning his duties, never received annual

4

training, and never underwent annual evaluations or interviews concerning his work performance.  (Id. at 85-86).

On January 12, 2011, Gilco filed this lawsuit against Logan County Sheriff Eddie Hunter, the Logan County Commission. the Logan County Sheriff's Department, the Logan County Home Confinement Department, home confinement officer Lois Nelson, Reed, and John Does I-V, asserting numerous federal and state law claims arising from Reed's alleged sexual abuse.[2]  Since that time, Sheriff Hunter, Logan County Sheriff's Department, and Lois Nelson have been voluntarily dismissed, as have those claims not named next below.[3]  Gilco's remaining claims are: (Count I) a claim against Reed under 42 U.S.C. § 1983 for

---

[2] Concomitant with the filing of Gilco's suit, two other women, Rebecca Whitt and April Tomblin Chafin, filed near-identical suits based on similar alleged conduct by Reed.  On September 2, 2011, the court ordered these three cases consolidated for discovery purposes, while reserving the question of consolidation for trial.  Defendants' motions for summary judgment on Whitt's and Chafin's claims are addressed in separate memorandum opinions entered contemporaneously herewith.

[3] Gilco's claims against John Does I-V have not been voluntarily dismissed.  None of them has been served with process in this action.  Discovery having concluded and dispositive motions having been fully briefed, the court concludes that Gilco has failed to state a claim against any unknown parties.  Accordingly, it is ORDERED that John Does I-V, be, and they hereby are, dismissed without prejudice as parties to this action.

violation of her Fourth, Eighth, and Fourteenth Amendment rights; (Count II) a section 1983 claim against the County Commission and Home Confinement Department for violation of her Fourth and Fourteenth Amendment rights; (Count III) the West Virginia tort of outrage against Reed; (Counts IV and V) claims against the County Commission and Home Confinement Department under the West Virginia Governmental Tort Claims Act ("Tort Claims Act") for vicarious liability and negligent hiring, retention, training, and supervision; and (Count VI) "miscellaneous state law claims" against Reed.

On June 21, 2012, the County Commission and Home Confinement Department filed a joint motion for summary judgment on Gilco's complaint. The same day, John Reed filed his own motion for summary judgment.

II. Summary Judgment - Governing Standard

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(c). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing -- "that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); id. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a

verdict in favor of the non-moving party.  <u>Anderson</u>, 477 U.S. at 248.  Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.  <u>Overstreet v. Ky. Cent. Life Ins. Co.</u>, 950 F.2d 931, 937 (4th Cir. 1991).

A court must neither resolve disputed facts nor weigh the evidence, <u>Russell v. Microdyne Corp.</u>, 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility. <u>Sosebee v. Murphy</u>, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  <u>Charbonnages de France v. Smith</u>, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).

### III.  Gilco's Claims against Reed

Gilco asserts three counts against defendant Reed: Count I, under section 1983, for violation of her Fourth,

8

Eighth, and Fourteenth Amendment rights; Count III, the tort of

outrage; and Count VI, "miscellaneous state law claims."  Reed

moves for summary judgment on all three counts.

1.  Section 1983

42 U.S.C. § 1983 provides that

> [e]very person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United
> States or other person within the jurisdiction thereof
> to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall
> be liable to the party injured in an action at law,
> suit in equity, or other proper proceeding for redress
> . . .

Government officials, like Reed, may be liable under section

1983 when they use force to control criminal suspects, pretrial

detainees, and convicted prisoners.  The constitutional right at

issue depends on the plaintiff's status at the time the official

used the force.  The Fourth Amendment applies to arrestees and

other "seized" individuals.  Graham v. Connor, 490 U.S. 386,

388-95 (1989).  The Due Process Clause, made applicable to state

officials by the Fourteenth Amendment, applies to pretrial

detainees and protects them from "excessive force that amounts

to punishment."  Id. at 395 (citing Bell v. Wolfish, 441 U.S.

520, 535-39 (1979)).  The Eighth Amendment applies to prisoners

9

and prohibits cruel and unusual punishment.  <u>See</u> <u>Hudson v. McMillian</u>, 503 U.S. 1, 6-7 (1992); <u>Whitley v. Albers</u>, 475 U.S. 312, 318-19 (1986).

In this case, Gilco was neither an arrestee nor a convicted prisoner.  Accordingly, neither the Fourth nor the Eighth Amendment is the appropriate vehicle for her claim.[4] However, inasmuch as Gilco's home confinement during the relevant time period was a condition of her bond stemming from a pending felony charge, she was, in effect, a pretrial detainee[5] whose claim is governed by the Due Process Clause of the Fourteenth Amendment.

To succeed on such a claim, Gilco must show that Reed "inflicted unnecessary and wanton pain and suffering."

---

[4] The Supreme Court "[has] not resolved the question whether the Fourth Amendment continues to provide individuals with protection against the deliberate use of excessive physical force beyond the point at which arrest ends and pretrial detention begins . . . ." <u>Graham</u>, 490 U.S. at 395 n.10. However, our Court of Appeals has concluded that "the Fourth Amendment does not embrace a theory of 'continuing seizure' and does not extend to the alleged mistreatment of arrestees or pretrial detainees in custody." <u>Riley v. Dorton</u>, 115 F.3d 1159, 1163-64 (4th Cir. 1997).

[5] <u>See</u> W. Va. Code § 62-11B-4 (authorizing home confinement as, <u>inter alia</u>, a condition of bail.

10

<u>Taylor v. McDuffie</u>, 155 F.3d 479, 483 (4th Cir. 1998), <u>abrogated in part by</u> <u>Wilkins v.Gaddy</u>, 130 S. Ct. 1175, 1179 (2010) (rescinding requirement that injuries resulting from excessive force be more than <u>de minimis</u>).  The proper inquiry is whether the defendant's alleged conduct was undertaken "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  <u>Whitley v. Albers</u>, 475 U.S. 312, 320-21 (1986) (citing <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2d Cir. 1973).  "In cases of sexual abuse or rape, the conduct itself constitutes sufficient evidence that force was used maliciously and sadistically for the very purpose of causing harm."  <u>Smith v. Cochran</u>, 339 F.3d 1205, 1212-13 (10th Cir. 2003).[6]

---

[6] <u>Smith</u> dealt with a prisoner's claim under the Eighth Amendment.  However, inasmuch as the Supreme Court has held that the protections of the Due Process Clause are at least as great as those of the Eighth Amendment, <u>City of Revere v. Massachusetts General Hosp.</u>, 463 U.S. 239, 244 (1983), any abuse of a prisoner which would violate the Eighth Amendment is presumptively violative of a pretrial detainee's Fourteenth Amendment rights.  <u>See</u> <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 188 n.10 (3d Cir. 1993) ("Pretrial detainees . . . are entitled to at least as much protection as convicted prisoners, so the protections of the Eighth Amendment would seem to establish a floor of sorts.").

Reed asserts, without authority, that he is entitled to summary judgment because: (1) Gilco was on home confinement; (2) Reed was not Gilco's home confinement officer; (3) Reed himself did not have the power to revoke Gilco's home confinement rights; and (4) Reed did not "physically force" Gilco to perform any sexual acts. (Reed's Mem. at 7). Even as each of these assertions may be true, they do not constitute any defense to Gilco's claim. Based on the evidence presented by both parties, viewed in the light most favorable to Gilco, Reed repeatedly leveraged his power as a home confinement officer to force Gilco to perform non-consensual sexual acts. On these facts, a reasonable jury could find that Reed, acting under color of state law, violated Gilco's constitutional right to be free from punishment without due process of law. Accordingly, Reed's motion for summary judgment on Count I of the complaint is denied.

2. Outrage

In Count III of her complaint, Gilco asserts a claim against Reed for the West Virginia tort of outrage, otherwise known as intentional infliction of emotional distress. "One who by extreme and outrageous conduct intentionally or recklessly

12

causes severe emotional distress to another is subject to
liability for such emotional distress, and if bodily harm
results from it, for such bodily harm." Syl. Pt. 6, Harless v.
First National Bank in Fairmont, 289 S.E.2d 692 (W. Va. 1982).
To prove a claim for intentional infliction of emotional
distress, a plaintiff must show the following:

> (1) that the defendant's conduct was atrocious,
> intolerable, and so extreme and outrageous as to
> exceed the bounds of decency; (2) that the defendant
> acted with the intent to inflict emotional distress,
> or acted recklessly when it was certain or
> substantially certain emotional distress would result
> from his conduct; (3) that the actions of the
> defendant caused the plaintiff to suffer emotional
> distress; and, (4) that the emotional distress
> suffered by the plaintiff was so severe that no
> reasonable person could be expected to endure it.

Syl. Pt. 3, Travis v. Alcon Laboratories, Inc., 504 S.E.2d 419
(W. Va. 1998). Whether the alleged conduct may be reasonably
considered outrageous is a threshold question for the court.
Id. at Syl. Pt. 4. Whether the conduct is in fact outrageous is
a question for the jury. Id.

Reed contends that his conduct was not "outrageous"
because "plaintiff had options": "she could have not driven
without a license, she could not have taken the Xanax, and she
could not have given Defendant Reed oral sex on two[]
occasions." (Reed Mem. at 9). In essence, Reed argues that if

13

Gilco did not want to be sexually assaulted, then she should not have violated the terms of her home confinement.  This argument is deeply flawed and equally offensive.  The court is satisfied that a reasonable person may consider repeated instances of sexual assault by a home confinement officer to be plainly "outrageous" for purposes of establishing that element of the claim, regardless of the "options" Reed maintains were available.  Accordingly, Reed's motion for summary judgment on Count III must be denied.

3. Miscellaneous State Law Claims

        In Count VI of her complaint, Gilco asserts that Reed's actions violated her rights under "the substantive laws of West Virginia, including, but not limited to, West Virginia Code Sections 61-2-9(c), 61-2-11, 61-5-28 and 61-5-13, and West Virginia Constitution Article I, Section 2, and Article II, Sections 1 & 3."  (Compl. ¶ 32).

        The four statutory provisions referenced in this count are criminal in nature:  battery; unlawful shooting at another in a street, alley or public resort; failure to perform official duties; and refusal of officer to make, or delay in making,

arrest.  The Legislature did not expressly create a private

right of action, and the West Virginia Supreme Court has not

acknowledged an implied private right of action for any of these

criminal statutes.

        With respect to the constitutional provisions included

in this count, Article I, Section 2 provides that

> [t]he government of the United States is a government
> of enumerated powers, and all powers not delegated to
> it, nor inhibited to the states, are reserved to the
> states or to the people thereof. Among the powers so
> reserved to the states is the exclusive regulation of
> their own internal government and police; and it is
> the high and solemn duty of the several departments of
> government, created by this constitution, to guard and
> protect the people of this state, from all
> encroachments upon the rights so reserved.

Next, Article II, Section 1 merely defines the geographic

boundaries of the state by reference to the counties and rivers

that were formerly parts of the commonwealth of Virginia.  W.

Va. Const. Art. II, § 1.  Finally, Article II, Section 3

provides that "All persons residing in this state, born, or

naturalized in the United States, and subject to the

jurisdiction thereof, shall be citizens of this state."  W. Va.

Const. Art II, § 3.  The court agrees with Reed's assessment

that "none of the above-mentioned constitutional provisions have

anything to do with the subject matter of [Gilco's] complaint

15

nor do [they] establish a viable State constitutional claim in this matter."  (Reed's Mem. at 10-11).

Accordingly, inasmuch as none of the miscellaneous state law claims give rise to a viable cause of action, Reed is entitled to summary judgment on Count VI in its entirety.


IV.  Gilco's Claims against the County Commission
and Home Confinement Department

Following a series of voluntary dismissals, the following claims remain against the Logan County Commission and Logan County Home Confinement Department (the "County defendants"):  Count II, under section 1983; Count IV, for vicarious liability under the West Virginia Governmental Tort Claims Act; and Count V, for negligent hiring, training, and supervision under the West Virginia Governmental Tort Claims Act.

1. Section 1983

     Gilco alleges that the County defendants violated her Fourth and Fourteenth Amendment rights.[7]  As discussed above, section 1983 creates a cause of action against any "person" who, under color of state law, violates a party's federally protected rights.  See supra, pt. II.B.1.  Municipalities, such as the County Commission, are "persons" subject to suit under section 1983.  Monell v. Department of Social Services, 436 U.S. 658, 690 (1978); see also Smallwood v. Jefferson County, 753 F.Supp 657, 659 (W.D. Ky. 1991) ("Because cities are 'persons' and because counties are much like cities, then logically, counties are 'persons.'").  However, "a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue.  Respondeat superior or vicarious liability will not attach under § 1983."  City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989) (emphasis in original).  To prove that a municipality itself was responsible for a constitutional deprivation, a plaintiff is required "to identify a municipal 'policy' or 'custom' that caused the

_____

     [7] Gilco's Eighth Amendment claim against the County defendants was voluntarily dismissed.

17

plaintiff's injury." <u>Board of County Com'rs of Bryan County,</u>
<u>Okl. v. Brown</u>, 520 U.S. 397, 403-04 (1997).  Based on the
allegations in the complaint, the court construes Gilco's
section 1983 claims against the County defendants to assert
liability on the basis of inadequate training, deficient hiring,
and inadequate supervision.

Inadequate training gives rise to section 1983
liability only when the failure to train amounts to "deliberate
indifference" to the plaintiff's federally protected rights.
<u>Id.</u> at 388.  Moreover, municipal liability can attach only when
inadequate training is the actual cause of the violation of the
plaintiff's rights.[8]  The Supreme Court has emphasized the
"stringent" nature of this causation requirement.  <u>Brown</u>, 520
U.S. at 415.  The "deliberate indifference" and stringent
causality standards also govern section 1983 claims on the basis

---

[8] "The Court's opinion in <u>City of Canton</u> variously refers to
a policy that is a 'direct causal link,' 'causes,' 'actually
caused,' or is 'closely related to the ultimate injury.' 489
U.S. at 385, 391.  Justice O'Connor's separate opinion refers to
'a very close causal connection.'  <u>Id.</u> at 395 (O'Connor, J.,
concurring in part and dissenting in part).  These appear to be
alternative ways of articulating a proximate cause requirement."
Martin A. Schwartz, <u>Section 1983 Litigation Claims and Defenses</u>
§ 7.17 n.

of inadequate supervision.  <u>Jones v. Wellham</u>, 104 F.3d 620, 628
(4th Cir. 1997).  A claim of deficient hiring, which is
necessarily based on a single decision by a municipal
policymaker, is subject to an even more demanding burden of
proof.  In such cases, a plaintiff must show that it was "very
likely" that "<u>this</u> officer" would "inflict the <u>particular</u> injury
suffered by the plaintiff."  <u>Brown</u>, 520 U.S. at 412 (emphasis in
original).

       With respect to her inadequate training claim, Gilco
has failed to produce evidence of any policy or custom that
caused her injury.  She hangs her hat on Reed's testimony that
he never received any training regarding sexual abuse or sexual
harassment.  However, the Supreme Court has counseled that the
fact that "a particular [employee] may be unsatisfactorily
trained will not alone suffice to fasten liability on the
[government entity]."  <u>City of Canton</u>, 489 U.S. at 390.  That is
because the absence of training in any particular case might
arise merely from the possible negligent administration of an
otherwise sound program.  <u>Id.</u> at 391; <u>see also</u> <u>Thelma D. By and</u>
<u>Through Delores A. v. Board of Educ. of City of St. Louis</u>, 934
F.2d 929, 935 (8th Cir. 1991) (application in context of sexual
abuse policy).  In this case, we have only the evidence that a

19

single officer, Reed, was inadequately trained.  Here, there is simply no evidence upon which a jury could base the conclusion that the County defendants' training policy was not "otherwise sound."   Thus, as a matter of law, Gilco cannot prevail on this claim.

The court must also conclude that Gilco's deficient hiring and supervision claims under section 1983 are without merit.  There is no indication in the record that, prior to hiring Reed, the County defendants knew or ought to have known that he was "very likely" to sexually assault or rape the individuals under his supervision as a home confinement officer. As to the supervision claim, there is insufficient evidence to conclude that the County defendants knew or ought to have known about Reed's alleged abusive activities.  Accordingly, none of these claims can survive Reed's motion for summary judgment.

2. West Virginia Government Tort Claims Act

Lastly, in Counts IV and V of her complaint, Gilco asserts a pair of claims arising under the West Virginia Governmental Tort Claims Act.  See W. Va. Code §29-12A-1, et seq.  Specifically, Count IV alleges that the County defendants

20

"are vicariously liable for the injury to plaintiff caused by the misconduct of Reed," and Count V alleges that the County defendants "were negligent in the hiring, retention, training, and supervision" of Reed.  (Compl. ¶¶ 27-30).  Though these claims are similar in nature to and arise from the same operative facts and conditions as Gilco's federal claims against the County defendants, they are subject to a different analysis under state law.

a.  Count IV: Vicarious Liability

While <u>Monell</u> prohibits municipal liability on the basis of <u>respondeat</u> <u>superior</u>, West Virginia law allows just that.  Under the Governmental Tort Claims Act,

> a political subdivision is liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
>
> . . .
>
> [] Political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees while acting within the scope of employment.

W. Va. Code §29-12A-4(c)(2).  Importantly, per the statute, political subdivisions are liable only for the <u>negligent</u> actions

21

of their employees.  A political subdivision is not liable "for any intentional malfeasance on the part of [its employee]." <u>Mallamo v. Town of Rivesville</u>, 197 W. Va. 616, 624 (1996).

Here, it is clear from the complaint that Gilco alleges Reed's sexual abuse was an intentional, rather than negligent, act.  Accordingly the Governmental Tort Claims Act does not apply to this claim, and the County defendants are entitled to summary judgment on the allegations contained in Count IV.

b. Count V: Negligent Hiring, Retention, Training & Supervision

Unlike her federal claim under section 1983, Gilco's claim under the Governmental Tort Claims Act for negligent hiring, training, and supervision does not require a showing of "deliberate indifference," nor does it require that she establish a widespread "custom or policy."  In West Virginia, claims of negligent hiring, retention, supervision, and training have been treated like other claims based in tort.  <u>See</u> <u>Pruitt v. West Virginia Dep't of Public Safety</u>, 222 W. Va. 290, 664 S.E.2d 175, 181-82 (W. Va.2008) (failure to train and/or

supervise); <u>Sipple v. Starr</u>, 205 W. Va. 717, 520 S.E.2d 884, 890
(W. Va. 1999) (negligent hiring and retention).

Even under the less burdensome state law standard,
Gilco's negligent hiring claim -- lacking any evidentiary basis
-- is without merit.  Likewise, inasmuch as Gilco has not
provided any evidence that the County defendants knew or ought
to have known about Reed's alleged misconduct, she cannot
maintain a claim of negligent supervision or retention.  As a
result, the County defendants are entitled to summary judgment
on these theories.

On the other hand, Reed's own testimony provides some
support for Gilco's negligent training claim.  As discussed
above, he testified that he received no training whatsoever,
before or after his hiring.  By his admission, Reed was simply
issued a badge and a radio and sent forth to discharge his
duties.  Yet, he says, he knew he was not to have sex with those
on home confinement.

Neither party addresses whether Gilco has satisfied
the causal element of this claim.  Mindful that the state law
standard is less "stringent" than its federal analogue, the

court concludes that Gilco is entitled to the inference that
some such training might have prevented her injuries.  While
Reed testified that he did not need to be told not to have sex
with his charges, the same could be said for most officers.
Nonetheless, such training is part of the normal course of
ethics training for many government employees, which would not
be so if it were entirely ineffective or unnecessary.  Whether
the lack of training in this instance mattered is a question for
the jury.

Accordingly, the County defendants' motion for summary
judgment on Gilco's state law negligent training claim is
denied.

### V.   Conclusion

Pursuant to the foregoing, it is accordingly ordered
that:

1. The motion for summary judgment of defendant John
   Reed be, and it hereby is, granted to the extent
   that it seeks summary judgment on Count VI and the
   Fourth and Eighth Amendment claims contained in

Count I.  The motion is denied as to Count III and the Fourteenth Amendment claim contained in Count I.

2. The motion for summary judgment of defendants Logan County Commission and Logan County Home Confinement Department be, and it hereby is, granted to the extent it seeks summary judgment on Gilco's federal claims in Count II, her state law claims in Count IV, and the state law negligent hiring, retention, and supervision claims contained in Count V.  The motion is denied as to Gilco's state law claim of negligent training in Count V.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

DATE:  August 17, 2012

John T. Copenhaver, Jr.
United States District Judge

25